**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CONRAC MANAGERS MDW, LLC,<br><br>　　　　　　Plaintiff<br>v.<br><br>GREAT NORTHERN INSURANCE COMPANY<br><br>　　　　　　Defendant. | Case No. 1:25-cv-13196<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH AND DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMAND** |

　　　　Plaintiff, Conrac Managers MDW, LLC ("Conrac"), by its attorneys, brings this action under a business owner's insurance policy issued by the Defendant, Great Northern Insurance Company ("GNIC").

## JURISDICTION AND VENUE

　　　　1.　　　This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

　　　　2.　　　Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Brown County, Chicago, Illinois, including that the insurance policy at issue was delivered to Conrac at its principal place of business in Illinois, and the incident giving rise to the claim occurred in Illinois.

　　　　3.　　　Moreover, GNIC is subject to the personal jurisdiction of this Court because GNIC has transacted and currently transacts business in Illinois.

## THE PARTIES

　　　　4.　　　Plaintiff, Conrac, is a limited liability company organized under the laws of the

state of Alaska with a principal place of business at 981 Powell Avenue SW, Suite 125, Renton, WA 98057.

5. Defendant, GNIC, is an insurance company incorporated in the state of Indiana with a principal place of business located at One American Square 202 N. Illinois Street, Suite 2600, Indianapolis, IN 46282.

## **FACTS APPLICABLE TO ALL COUNTS**

6. This is an insurance dispute between Conrac and GNIC. GNIC claims that coverage for the liability claim, as described below, is limited to the property's pre-loss condition and that an enhancement exclusion in the Policy, as set forth below, applies to deny or limit coverage.

7. Conrac disputes that the exclusion applies. Moreover, the purported limitation in the Policy advanced by GNIC is unsupported by the terms of the applicable insuring agreement.

### *The Policy*

8. Conrac is the Named Insured under a Customarq Classic Insurance Program Policy issued by GNIC, Policy No. 3595-50-13 PLE, for the Policy Term from March 13, 2020, to March 13, 2021 (the "Policy"). The Policy provides Property and Liability Coverage. A true and accurate copy of the Policy is attached as **Exhibit A.**

9. The Liability Coverage of the Policy is subject to an Each Occurrence Limit of $1,000,000 and General Aggregate Limit of $2,000,000.[1]

10. The insuring agreement for the Bodily Injury and Property Liability Coverage Section of the Policy reads:

> Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
>
> - imposed by law; or

---

[1] See **Exhibit A**, Liability Insurance Declarations.

- assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.[2]

11. Each of the words and phrases that appear in bold is defined in the Policy.[3]

12. The Policy includes the following definitions:

  a. **Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured section of this contract.

  b. **Insured contract**:
   A. Means:
      1. a lease of premises;
      2. a sidetrack agreement;
      3. an easement or license agreement;
      4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
      5. an elevator maintenance agreement; or
      6. any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for such municipality) in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization.
   ***

  c. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

---

[2] See **Exhibit A**, Liability Insurance, Coverages.
[3] Id.

d. **Property damage** means:
- Physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

e. **Suit** means a civil proceeding in which damages, to which this insurance applies, are sought.***

13. The Policy includes an Enhancement Maintenance Or Prevention Expenses exclusion ("Enhancement Exclusion"), which reads:

This insurance does not apply to any loss, cost or expense incurred by you or others for any:

A. Enhancement or maintenance of any property; or

B. Prevention of any injury or damage to any:

1. Person or organization; or

2. Property you own, rent or occupy.

14. Conrac contends that the stated exclusion does not apply.

### The Claim

15. On February 24, 2021, the snow chute at the Consolidated Rental Car Facility at Midway Airport ("Snow Chute"), suffered a catastrophic failure during snow removal operations, rendering the Snow Chute unusable (the "Incident").

16. The Consolidated Rental Car Facility ("Facility"), including the Snow Chute, are owned by the City of Chicago ("City).

17. Conrac, as Facility Manager, is responsible for maintaining the Facility, including

4

snow removal.

18. The City and the Chicago Department of Aviation ("CDA"), a department of the City, immediately looked to Conrac to promptly repair or replace the Snow Chute.

19. To date, the Snow Chute has not been repaired or replaced.

### *GNIC's Incomplete Investigation and Adjustment of the Claim*

20. Immediately after the Incident, Conrac gave notice to GNIC under the Policy in connection with the Incident (the "Claim").

21. GNIC acknowledged the Claim under the Liability Coverage of the Policy.

22. Initially, it was believed that the Incident occurred because the snow removal contractor, Tovar Snow Professional ("Tovar"), had overloaded the Snow Chute, causing some of the panels of the Snow Chute to crack and others to fall to the ground below.

23. Following, GNIC sought to hold Tovar accountable for the Incident.

24. Upon information and belief, GNIC subrogated against Tovar and gave Tovar a Release in exchange for payment to GNIC by Tovar and/or its insurers.

25. GNIC has not disclosed to Conrac how much it received from the subrogation effort.

26. GNIC conducted no independent investigation as to the cause of the Incident.

27. GNIC did not seek to determine the extent of the repair necessary.

28. GNIC failed to hire engineers or other experts to assist in properly adjusting the claim.

29. GNIC failed to determine whether any repair would be acceptable to the City or CDA (collectively, "Claimants").

30. Instead, and without consulting Claimants, GNIC funded a repair estimate from

Professional Prestress Services ("PPS"), making payment directly to PPS in the amount of $243,000.

31. GNIC's payment to PPS was made without a Settlement Agreement and Release from Claimants.

32. GNIC's payment to PPS was made before determination was made whether a replacement snow chute based on the original design was appropriate.

33. Following further investigation, PPS revised its proposal and remedial solution to $595,000 ("Revised Repair Proposal").

34. The Revised Repair Proposal was tentatively approved by the Chicago Department of Buildings on Claimants' behalf.

35. GNIC, however, has refused to pay for the necessary repairs and the repairs have not been made.

36. Claimants are threatening to commence litigation against Conrac.

### *GNIC's Improper Coverage Position*

37. By letter dated April 1, 2025, GNIC denied coverage to Conrac for the Revised Repair Proposal, stating that "the policy only covers damages that Conrac is 'legally obligated to pay' by reason of liability imposed by law or assumed in an insured contract." See GNIC Coverage Letter, dated April 1, 2025, **Exhibit B**.

38. Citing to the Enhancement Exclusion, GNIC took the position that the Policy "expressly excludes coverage for any . . . enhancement . . . of any property."[4]

39. GNIC further advised that should Conrac proceed to fund additional work without GNIC's approval, such payments would not be reimbursable under the Policy.[5]

---

[4] See **Exhibit B**.
[5] Id.

40. Conrac, through the law firm of Saxe Doernberger & Vita, P.C. ("SDV"), responded to the GNIC Coverage Letter in correspondence dated May 27, 2025, and requested that GNIC reconsider its position.

41. To date, GNIC's coverage position remains unchanged.

<b><u>FIRST CAUSE OF ACTION</u></b><br><b>(Breach of Contract)</b>

42. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if set forth fully herein.

43. Under the Liability Coverage of the Policy, GNIC promised to "pay damages that the **insured** becomes legally obligated to pay by reason of liability . . . imposed by law; or . . . assumed in an **insured contract** . . . for . . . **property damage** caused by an **occurrence**."[6]

44. Conrac timely reported the Claim under the Policy.

45. GNIC made partial payment on the claim under the Policy in connection with the Incident.

46. GNIC asserted that any liability Conrac may have to Claimants should be limited to restoring the Snow Chute to its pre-loss condition.

47. The Liability Coverage of the Policy does not limit GNIC's coverage obligation to restoring covered property damage to its pre-loss condition.

48. GNIC improperly relies upon the Enhancement Exclusion to deny or limit coverage under the Policy.

49. The Enhancement Exclusion states that "[t]his insurance does not apply to any loss, cost or expense incurred by you or others for any . . . enhancement or maintenance of any property."

---

[6] See **Exhibit A**.

50. The Liability Coverage of the Policy obligates GNIC to "pay damages that the **insured** becomes legally obligated to pay . . ."

51. The Enhancement Exclusion does not apply to damages; it only applies to "loss", "cost", and "expense".

52. Accordingly, GNIC may not rely upon the Enhancement Exclusion to deny or limit coverage for the Claim.

53. Further, the word "enhancement" is undefined in the Policy.

54. To the extent "enhancement" is undefined, the Policy is ambiguous and the Enhancement Exclusion is unenforceable.

55. GNIC is obligated to pay for the Revised Repair Proposal.

56. To date, GNIC has failed and refused to indemnify Conrac for covered damages in connection with the Revised Repair Proposal.

57. Said failure and refusal constitutes a breach of the Policy.

58. As a consequence of GNIC's breach, Conrac has been, and continues to be, damaged.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment)**

59. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if set forth fully herein.

60. The Incident occurred on February 24, 2021.

61. To date, the Snow Chute has not been repaired or replaced and Claimants are threatening to commence litigation against Conrac as a result thereof.

62. GNIC has refused to pay for the Revised Repair Proposal.

63. GNIC has informed Conrac that GNIC will not reimburse Conrac for any self

funded payments.

64. Having failed to resolve the claim for over four years, GNIC is in breach of the Policy and has waived Conrac's strict compliance with the voluntary payments provision of the Policy.

65. Pursuant to the terms of the Policy, Conrac is entitled to a declaration that GNIC is obligated to indemnify Conrac for damages that Conrac becomes legally obligated to pay.

66. To the extent Conrac self-funds repairs in response to Claimants' demands, Conrac is entitled to a declaration that GNIC must reimburse Conrac.

67. To the extent Claimants file suit against Conrac, Conrac is entitled to a declaration that GNIC must defend Conrac.

68. An actual and justiciable controversy exists between Conrac and GNIC regarding GNIC's obligations under the Policy.

69. A declaratory judgment, pursuant to 28 U.S.C. § 2201, is necessary and appropriate to determine the rights and duties of Conrac and GNIC.

## THIRD CAUSE OF ACTION
### (Bad Faith)

70. Plaintiff realleges and incorporates by reference each and every allegation set forth above as if set forth fully herein.

71. GNIC has not fulfilled its contractual obligations, nor has it acted in good faith in handling the Claim.

72. For over four years, GNIC has failed to adequately investigate the claim, has put its interests above the interests of its insured, and has unreasonably delayed resolving the Claim.

73. GNIC paid a general liability claim without investigating whether the repairs it was funding were appropriate, structurally safe, or acceptable to Claimants.

74. GNIC paid a third-party, PPS, for repairs, without consulting with Claimants and then failed to obtain a Release of Conrac's potential liability to Claimants.

75. GNIC prematurely and wrongfully subrogated against the at-fault contractor, Tovar. GNIC then released Tovar, without first fully protecting its own insured, which is prohibited under Illinois law.

76. GNIC's actions and inactions have prejudiced Conrac's relationship with its customers and business partners as well as Conrac's rights to seek recourse from Tovar.

77. GNIC has done nothing to protect Conrac and instead has engaged in activities only designed to protect GNIC's interests while prejudicing Conrac.

78. Further, GNIC has yet to reveal how much money it recovered from Tovar on its subrogation claim.

79. GNIC's actions constitute breaches of GNIC's contractual obligations and statutory and common law duty of good faith and fair dealing.

80. GNIC's actions constitute unfair claims practices in violation of 215 ILCS § 5/154.6.

81. As a result of GNIC's unreasonable and vexatious delays settling the Claim, Conrac is entitled to attorney's fees and statutory relief pursuant to 215 ILCS § 5/155.

82. By reason of the aforesaid wrongful actions by GNIC, Conrac has been forced to commence this action against GNIC and will be forced to undertake such other and further steps as necessary to fully and adequately protect its interests.

83. By reason of the foregoing, GNIC has suffered, and continues to suffer, damages, including, but not limited to, the total amount of damages caused by the Incident less the <u>de minimis</u> amount already paid by GNIC, interest, reasonable attorneys' fees, and increased damages

by reason of GNIC's conduct in the handling of Conrac's Claim under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Conrac Managers MDW, LLC, respectfully requests that the Court enter judgment in its favor and against Defendant, Great Northern Insurance Company, as follows:

A. All compensatory damages;

B. A declaration of the parties' rights and obligations under the Policy;

C. Attorneys' fees and costs as permitted by law;

D. Attorneys' fees and statutory penalties pursuant to 215 ILCS § 5/155;

E. Pre- and post-judgment interest; and

F. Such other and further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

PLAINTIFF, CONRAC MANAGERS MDW, LLC,

By and through its undersigned Counsel:

Dated: October 29, 2025     By: /s/ Anna Perry
Anna M. Perry (697942)
SAXE DOERNBERGER & VITA, P.C.
35 Nutmeg Drive, Suite 140
Trumbull, Connecticut 06611
T: 203.287.2100
F: 203.287.8847
P: 239-316-7244
E: APerry@sdvlaw.com